Rockingham
No. 79-332

DENNIS J. RABE

v.

MICHAEL J. CARNABY *& a.*

MICHAEL J. CARNABY *& a.*

v.

RONALD B. MOORES
d/b/a R. B. MOORES ASSOCIATES

December 17, 1980

*R. Laurence Cullen,* of Hampton, by brief and orally, for the plaintiff Dennis J. Rabe.

*G. Page Brown, Jr.,* of Exeter, by brief and orally, for the plaintiff-defendants Michael J. Carnaby and Ann J. Carnaby.

*Taylor & Gray,* of Portsmouth (*Alvin E. Taylor* orally), for the defendant Ronald B. Moores.

BROCK, J.   This appeal primarily involves an action brought by the seller (Carnaby) of certain real estate against a surveyor whom he had retained at the time he purchased the property. The seller alleges that the surveyor had negligently drawn a subdivision plan that incorrectly showed that one of the lots had direct access to town water. This action was tried below with a deceit action which the purchaser of the lot in question brought against the seller, claiming that the seller had represented that the lot had town water when in fact it did not. Trial before a Master (*Mayland H. Morse, Jr.*, Esq.) resulted in a recommended verdict for the purchaser in the sum of $5,048.50 against the seller. In the seller's action against the surveyor, a verdict for the surveyor was recommended. *Mullavey*, J., approved the master's report, and the seller then filed a notice of appeal in this court alleging both that the amount of the buyer's verdict against him was excessive and that the trial court erred in not returning a verdict in his favor against the surveyor. We affirm.

The facts pertinent to this appeal are as follows. In October 1976, at the time he was contemplating the purchase of the larger tract of land in Hampton, the defendant-seller, Michael Carnaby, engaged the services of a registered surveyor, Ronald B. Moores, to draw a subdivision plan which was required in the future if he wished to sell lots from the tract in question. At that time, Mr. Carnaby indicated to Mr. Moores that the tract had a town water main running along its entire frontage on Tide Mill Road. Mr. Moores then proceeded to survey the land and prepare the plan. In the course of his research, Mr. Moores relied upon a plan that the Southern Engineering Company had prepared for the town of Hampton. In particular, he relied upon that plan for the purpose of determining the location of the town water main.

The plan that Mr. Moores produced indicated that a town water main passed in front of Mr. Carnaby's lots. Subsequently, in September 1977, Mr. Rabe purchased one of the lots upon Mr. Carnaby's representation that town water was available. Shortly thereafter, however, Mr. Rabe learned from the town water department that the water main did not extend to his lot and it would cost approximately $4,500 to extend it to his lot. Communications between the parties and their representatives followed, which resulted in Mr. Rabe delaying construction of a house he intended to build on the lot on speculation. Eventually, Mr. Rabe had a well dug in order to obtain a water supply for the lot. He then brought this action against the seller, Mr. Carnaby, who in turn brought an action against the surveyor, Mr. Moores.

■ At trial, Mr. Carnaby offered no expert testimony concerning the standards of care applicable to registered surveyors. Mr. Moores did, however, testify that it was reasonable for him to rely on the plan prepared by Southern Engineering which indicated the location of the water line, and that he copied the location of the water main exactly as shown on that plan. In view of the fact that no further evidence concerning the professional standards of surveyors was offered and that Carnaby had represented that town water ran along the entire frontage of the tract, the master ruled that it was reasonable for Mr. Moores to rely on the Southern Engineering survey. Shortly after the master's report was issued, however, Mr. Moores, by motion, corrected his testimony to indicate that he had in fact made a mistake in copying the water main in that his survey did not exactly track the location of the water main as shown on the Southern Engineering plan. Upon hearing on a motion for reconsideration, the master determined that this change in testimony did not affect his ultimate decision in the case.

Upon reviewing the evidence, we observe that a copy of the Southern Engineering plan has not been made part of the record, nor does it appear that it was ever formally offered into evidence at any of the proceedings below. It is apparent, however, that the Southern Engineering plan itself was incorrect in its representation as to the actual location of the water main. From what we are able to ascertain from the record, the Southern Engineering survey located the water main in proximity to the lot in question, but we have no way of knowing how much of a discrepancy existed between Mr. Moores' survey and that of Southern Engineering. In any event, the master determined that the discrepancy was of no significance to his decision and we are in no position to say that the master abused his discretion in making that determination. *See Manchester Housing Authority v. Hamilton Realty Corp.*, 120 N.H. 490, 418 A.2d 1269 (1980).

■ Carnaby's final argument is that the verdict entered against him and in favor of Rabe was excessive. "On review, we will not set aside a verdict on the grounds that it is excessive unless we conclude that no reasonable person could have returned such a verdict." *Pleasant Valley Campground, Inc. v. Rood*, 120 N.H. 86, 89–90, 411 A.2d 1104, 1106 (1980). It is uncontested that Rabe paid $3,048.50 for the well. Moreover, the master found that Rabe had "proven that certain delays [attributable to the lack of town water resulted in] extra expenses . . . and [that] other compensable

expenses incurred constitute[d] a natural consequence of the breach occasioned by the lack of water available" at the site. On this basis, we cannot say that the verdict was excessive.

*Affirmed.*

All concurred.